**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHARLES L. COOPER, M.D., and
MARY R. COOPER,

    Plaintiffs,

v.                                                           Case No. 4:05cv221-SPM/AK

PARAGON FINANCIAL GROUP, INC.,

    Defendant.

_____/

**<u>ORDER COMPELLING ARBITRATION AND DISMISSING CASE WITH PREJUDICE</u>**

      THIS CAUSE comes for consideration upon Defendant, PARAGON FINANCIAL GROUP, INC.'s, Motion to Compel Arbitration and Stay Judicial Proceedings (doc 5). This Court has considered not only the motion and memorandum in support thereof (doc. 8), but it has also reviewed Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings (doc 15), and Defendant's Request for Leave to File Reply in Support of Motion to Compel Arbitration and Stay Judicial Proceedings (doc 16). For the reasons set forth below, Defendant's motion is GRANTED and the complaint is DISMISSED with prejudice.

**I.  Background**

      In April of 2002, the Plaintiffs opened an account with Bear Stearns Securities Corporation. and entered into a "Customer Agreement" ("Bear Stearns Agreement"). (doc 8-1, p. 16)  Among other things, the Plaintiffs agreed to arbitrate any "controversies

arising between [the Plaintiffs] and [their] introducing broker and/or Bear Stearns, and any of [the Plaintiffs'] or [the introducing brokers' or Bear Stearns'] control persons, predecessors, subsidiaries, affiliates, successors, assigns and employees . . . ." (doc 8-1, p. 17)  The Plaintiffs further agreed that any such arbitration would be "held at the facilities and before an arbitration panel appointed by the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. . . . ." (doc 8-1, p. 17) This provision also contained the following language: "For any arbitration solely between you and a broker for which Bear Stearns acts as a clearing agent, such election shall be made by registered mail to such broker at its principal place of business." (doc 8-1, p. 17)

In December of 2004, Plaintiffs filed with the National Association of Securities Dealers Dispute Resolution ("NASD-DR") a Statement of Claim.  (doc 6, p. 1; doc 8-1) The Statement of Claim alleged claims against Defendant for negligence, breach of fiduciary duty, common law fraud, fraud under the Securities Exchange Act, fraudulent inducement, conversion, violation of the Florida Securities and Investor Protection Act, gross negligence, failure to supervise, and breach of contract.[1]  (doc 8-1, p. 11)  On December 30, 2004, Plaintiffs also entered into a Uniform Submission Agreement ("USA") with the NASD.  (doc 8-1, p. 14)  By entering the USA, Plaintiffs agreed to have the issues contained in the Statement of Claim resolved by arbitration in accordance with the constitution, bylaws, rules, regulations, and Code of Arbitration Procedure of

---

[1]The Statement of Claim alleged the same claims against Donald W. Reinhard, Magnolia Capital Advisors, Inc., William Lee, and Bear Stearns Securities Corp.  (doc. 8-1, p. 2)  However, none of these parties are parties to the instant case.

the NASD.  (doc 8-1, p. 14)

On February 7, 2005, the NASD sent a letter to Plaintiffs informing them that Defendant's membership with the NASD had terminated, and that "due to [Defendant's] membership status, [Plaintiffs] *may, but [are] not required to*, arbitrate [their] claim with the NASD Dispute Resolution forum, even if the [Plaintiffs had] previously signed a predispute arbitration agreement with [Defendants] to arbitrate the claim here."  (doc 8-2, p. 1)  The letter further provided that "[b]ased on the Uniform Submission Agreement, NASD Dispute Resolution will assume that the claimant wants to proceed with the claim in this forum, unless the claimant notifies us in writing on or before March 14, 2005 that he or she does not want to arbitrate this claim in this forum."  (doc 8-2, p. 1)

The Defendant claims that the NASD-DR never received from the Plaintiffs the required written notice.  (doc 6, p. 3)  On the other hand, the Plaintiffs claim that after receiving the NASD-DR's letter, their counsel contacted the NASD-DR by telephone and indicated that Plaintiffs did not intend to submit to arbitration their claims against the Defendant.  (doc 15-1, p. 3) The Plaintiffs re-affirmed their intention to not submit to arbitration the claim against the Defendant by filing with the NASD-DR a First Amended Statement of Claim which omitted the Defendant as a party to the arbitration.  (doc 15-1, p. 3; doc 8-2, p. 4)

The Plaintiffs subsequently filed in state court a complaint against the Defendants.  (doc 1, p. 6)  Plaintiffs allege in their complaint that the Defendant acted as the Plaintiff's "broker dealer" and that Bear Stearns acted as the Defendant's "clearing firm."  (doc 1, pp. 6, 7)  On June 22, 2005, the Defendant invoked this Court's diversity jurisdiction and removed the case to this Court.  (doc 1, p. 1)  Shortly thereafter, the

Defendant submitted its Motion to Compel Arbitration and Stay Judicial Proceedings, arguing first that under the Federal Arbitration Act, the Plaintiffs are required to submit their claims to arbitration.  (doc 6, p. 18).  Alternatively, the Defendant argues that if a valid arbitration agreement does not exist, the Plaintiffs should be equitably estopped from litigating their claims in this Court and should instead be compelled to arbitrate. (doc 6, p. 18).  In response, the Plaintiffs argue that because the Defendant is no longer a member of the NASD, the Plaintiffs cannot be compelled to arbitrate their claim against the Defendant.  (doc 15-1, p. 6)  The Plaintiffs further contend that the Defendant is not entitled to equitable relief because the Defendant comes to this Court with unclean hands (doc 15-1, p. 12), an argument which Defendant urges the Court to reject (doc 16, p. 2).

**II.     Discussion**

A.      <u>Applicable law</u>

The Federal Arbitration Act (FAA)[2] applies to all arbitration agreements involving interstate commerce.  See <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, (2003).  A customer dispute in the securities industry involves interstate commerce.  See <u>Multi-Fin. Sec. Corp. v. King</u>, 386 F.3d 1364, 1367 (11th Cir. 2004) (applying the FAA to an arbitration agreement between an NASD member and an investor).  "The effect of the [FAA] is to create a body of federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act."  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).  Contract defenses that are recognized under state

---

[2] 9 U.S.C. §§ 1-16.

law, such as fraud, duress, and unconscionability, may be applied to invalidate arbitration agreements. Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002). The state law applied, however, must "govern[] contracts generally and not arbitration agreements specifically." Id.

As the Supreme Court has repeatedly held, the policy underlying the FAA is in favor of arbitration. See e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Id. Thus, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in the favor of arbitration.'" Id. (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

Both parties seem to agree that the Federal Arbitration Act ("FAA") governs both the Bear Stearns Customer Agreement and the USA. However, the Bear Stearns Agreement contains a choice of law provision that explicitly adopts the laws of the state of New York. (doc 8-1, p. 16) Thus, this Court is required to apply New York law in interpreting the arbitration clause in the Bear Stearns Agreement. See Volt Info. Sci. v. Bd. of Tr. of the Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). However, where New York law conflicts with the FAA's policy in favor of arbitration, federal law displaces state law. See Doctor's Assoc., 517 U.S. at 687. Moreover, any doubts as to the scope of the Bear Stearns Agreement will be resolved in favor of arbitrability. See Mitsubishi, 473 U.S. at 626.

B.  Interpretation of the Bear Stearns Agreement

    I.  *The Defendant is a third-party beneficiary of the Bear Stearns Agreement.*

Because the Bear Stearns Agreement contains a choice of law provision, this Court must apply New York rules of construction in interpreting the arbitration clause. See Volt Info. Sci., 489 U.S. at 479.  Specifically, this Court must apply New York law in determining whether the Defendant is a third party beneficiary of the Bear Stearns Agreement.  The Defendant is not a signatory to the agreement; however, it argues that as an "express third party beneficiary," it is entitled to rely on the Bear Stearns Agreement to compel the Plaintiffs to submit their claims to arbitration.  (doc. 6, p. 6)

Under New York law, "[o]nly an intended beneficiary may maintain an action as a third party; an incidental beneficiary may not."  Artwear v. Hughes, 615 N.Y.S.2d 689, 692 (N.Y. App. Div. 1994).  See also McPheeters v. McGinn, Smith and Co., 953 F.2d 771, 773 (2d Cir. 1992); Nationwide Mut. Ins. Co. v. Corsey, 309 N.Y.S.2d 30, 32 (N.Y. Sup. Ct. 1970).  To support the contention that one is a third-party beneficiary, "the contract language should . . . clearly evidence 'an intent to permit enforcement by the third party.'"  Artwear, 615 N.Y.S.2d at 689 (quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208 (N.Y. 1985)).

In the instant case, it is clear that both the Plaintiffs and Bear Stearns intended the Defendant to be a beneficiary of the Bear Stearns Agreement.  The arbitration clause specifically lists Plaintiffs' and Bear Stearns' control persons, predecessors, subsidiaries, affiliates, successors, assigns, and employees as those parties that benefit from the provision.  (doc. 8-1, p. 17)  Even if it can be successfully argued that the Defendant qualifies as none of these parties, the clause later specifically provides a procedure for selecting the forum in which to arbitrate a claim between the Plaintiffs and  "a broker for which Bear Stearns acts as clearing agent." (doc. 8-1, p.17)  As the Plaintiffs concede in

their Complaint, the Defendant in the instant case acted as the Plaintiffs' "broker/dealer" and Bear Stearns acted as the Defendant's "clearing firm." (doc. 1, pp. 6, 7). Thus, the inclusion of the specific reference to "a broker for which Bear Stearns acts as clearing agent" in the forum selection provision clearly indicates that at the time of execution, the Plaintiffs and Bear Stearns both intended to permit Defendant to enforce the arbitration clause. See Artwear, 615 N.Y.S.2d at 689. Therefore, under New York law, the Defendant is an intended beneficiary of the Bear Stearns Agreement, and as such, can rely on it to compel the Plaintiffs to submit their claims to arbitration. See id.

> ii. *NASD Rule 10301 is neither incorporated into nor made part of the Bear Stearns Agreement.*

The Plaintiffs argue that the Bear Stearns Agreement incorporates the NASD's dispute resolution rules, which prohibit a former member from enforcing a pre-dispute arbitration agreement. (doc. 15-1, p. 6) According to the Plaintiffs, because the Bear Stearns Agreement includes the NASD-DR as one of four fora in which the Plaintiffs' claims may be arbitrated, the agreement incorporates the NASD's dispute resolution rules. (doc. 15-1, p. 6). The Defendant, a terminated NASD member, may not therefore compel the Plaintiffs to submit their claims to arbitration. (doc. 15-1, p. 6) For the reasons set forth below, this Court disagrees with the Plaintiffs' position.

NASD Rule 10301 provides that an NASD member whose membership has been terminated, suspended, canceled, or revoked may not compel a customer to arbitrate any claims against the former member unless the customer agrees in writing to arbitrate the claim after it has arisen. (doc 8-2, pp. 20-21). In support of their contention that Rule 10301 applies to the instant case, the Plaintiffs cite NASD Rule 10301, Elston v.

Toma, 2004 WL 1048132 (D. Or. Apr. 15, 2004), and Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974).  However, none of these authorities justify denial of the Defendant's motion.

NASD Rule 10301 provides that "[t]his code shall be deemed a part of and incorporated *by reference* in every agreement to arbitrate under the Rules of the Association including a duly executed Submission Agreement" (emphasis added).  The Plaintiffs argue that this rule should be interpreted to mean that the NASD-DR rules are incorporated into any agreement that merely mentions the NASD.  (doc 15-1, p. 6).  However, this Court reads Rule 10301 to require incorporation of the NASD-DR rules only where the NASD Code of Arbitration Procedure is explicitly mentioned in the agreement.  In the instant case, the NASD, not the NASD Code of Arbitration Procedure, is referenced in the Bear Stearns Agreement.  (doc. 8-1, p. 17).  Moreover, the NASD is mentioned as only one of four potential fora for the resolution of a dispute under that agreement.  (doc. 8-1, p. 17).  Therefore, this Court holds that Rule 10301 does not apply to the Bear Stearns Agreement.

Plaintiff next urges this Court to follow the reasoning of the District Court of Oregon in Elston.  In Elston, 2004 WL 1048132 at *1, the plaintiff brought a securities fraud action against the defendant.  The defendant moved to compel arbitration pursuant to the terms of the Client Account Form that the plaintiff had signed when he purchased the stock.  Id. at *8.  That agreement provided: "The undersigned agree(s) that any and all controversies which may arise between [the plaintiff] and [the defendant] . . . shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers (NASD)."  Id. at *9.  The defendant's membership with

the NASD was subsequently terminated.  Id.  Based on the language of the arbitration clause, the court applied NASD-DR Rule 10301 and held that the defendant could not compel the plaintiff to arbitrate his claim.  Id. at *10, *11.

The instant case is distinguishable from Elston because, unlike the Client Account Form in that case, the Bear Stearns Agreement did not explicitly incorporate the NASD rules.  Thus, the reasoning behind the Elston decision does not apply to the instant case.

Finally, the Plaintiffs point to the language in the Supreme Court's decision in Scherk to support their position that the NASD-DR rules are incorporated into the Bear Stearns Agreement.  (doc. 15-1, p. 6)  In Scherk, the Supreme Court stated that "[a]n agreement to arbitrate before a *specified tribunal* is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  417 U.S. at 519 (emphasis added).   In interpreting this language, this Court must keep in mind that the policy underlying the FAA is in favor of arbitration.  See Mitsubishi Motors Corp., 473 U.S. at 626.  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in the favor of arbitration."  Id.

In Scherk, the Supreme Court referred to a "specified tribunal."  It is debatable whether an agreement can be made to arbitrate before a "specified tribunal" where the forum-selection portion of an arbitration clause lists four different fora from which to choose.  Thus, in light of the policies underlying the FAA, this Court finds that the Bear Stearns Agreement's inclusion of the NASD as one of four potential fora does not rise to the selection of the NASD as a "specified tribunal."  See id.  (doc. 8-1, p. 17)  Therefore, this Court finds that the reference to the NASD in the forum-selection portion of the arbitration clause as a potential situs of arbitration does not implicitly incorporate the

NASD dispute resolution rules.

## III. Conclusion

This Court's interpretation of the Bear Stearns Agreement leads to the conclusion that the Defendant may rely on it in compelling the Plaintiffs to submit their claims to arbitration. Thus, it is unnecessary for this Court to reach the issue of whether the NASD USA provides grounds for compelling the Plaintiffs to arbitrate their claims. Nor is it necessary for this Court to reach the Defendant's equity argument.

As a result, because all of the issues involved in this case are subject to arbitration, dismissal of the complaint is a proper remedy. See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709 (4th Cir. 2001). The mandatory stay rule in section 3 of the FAA is not applicable where all issues in an action are arbitrable; thus, staying the case and retaining jurisdiction would serve no purpose. See Fedmet Corp. v. M/V Buyalyk, 194 F.3d 674, 678 (5th Cir. 1999)(citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir.1992)).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Defendant's Motion to Compel Arbitration (doc. 5) is hereby GRANTED.
2. This case is DISMISSED with prejudice.

3. All pending motions are denied as moot.

**DONE AND ORDERED** this <u>twelfth</u> day of September, 2005.

<u>  s/ Stephan P. Mickle  </u>
Stephan P. Mickle
United States District Judge